**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| **MARIE NATIVIDAD LAGUNAS-ANTUNEZ, ADMINISTRATOR OF THE ESTATE OF RIGOBERTO LAGUNAS ANTUNEZ, DECEASED,** <br> **17 Pantops Street** <br> **Raleigh, NC 27603** <br><br>      **Plaintiff,** <br>      **v.** <br><br> **COREY RASHAD GOODE-HAYES** <br> **69 Tall Pines Way, Apt. C** <br> **Newport News, VA 23606** <br><br> **And** <br><br> **U-HAUL INTERNATIONAL INC.** <br> **2727 N. Central Avenue** <br> **Phoenix, AZ 85004** <br><br> **And** <br><br> **U-HAUL CO. OF ARIZONA** <br> **2721 N. Central Ave,** <br> **Phoenix, AZ 85004** <br><br> **And** <br><br> **U-HAUL CO. OF VIRGINIA** <br> **2855 Airline Blvd.** <br> **Portsmouth, VA 23701** <br><br>      **Defendants.** | **CASE NO.: 2:24-cv-416** <br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Marie Natividad Lagunas-Antunez, as Administrator of the Estate of Rigoberto Lagunas-Antunez, by and through undersigned counsel, hereby demands judgment against the above-named Defendants, and states as follows by way of complaint:

**PARTIES**

1.      Marie Natividad Lagunas-Antunez is the duly appointed Administrator of the Estate of Rigoberto Lagunas-Antunez.  Marie Natividad was appointed Administrator of the Estate on March 6, 2023, by the Clerk of the Circuit Court of Southampton County.  Plaintiff, as personal representative, brings this claim on behalf of Rigoberto Lagunas-Antunez' surviving beneficiaries.  At the time of Rigoberto Lagunas-Antunez death, he was a resident of the state of North Carolina, residing at 17 Pantops Street, Raleigh, North Carolina, 27603.

2.      At all times relevant hereto, Rigoberto Lagunas-Antunez, was employed by and working within the scope of his employment for Navarro Roofing of NC Company Limited located at 400 Mohawk Trail, Clayton, North Carolina, 27527.

3.      Defendant Corey Rashad Hayes-Goode (hereinafter "Hayes-Goode) is an individual residing in the Commonwealth of Virginia at 69 Tall Pines Way, Apartment C, Newport News, Virginia 23600.

4.      At all times relevant hereto defendant Hayes-Goode was the operator of a box truck mounted on a 2019 Ford F650 chassis with U-Haul livery identified by VIN number 1FDNF6CY2KDB92425 (hereinafter the "Subject Box Truck.)

5.      Defendant, U-Haul International Inc. ("U-Haul International") is a corporation organized and existing under the laws of the State of Nevada with a principal place of business located at 2727 N. Central Ave, Phoenix Arizona 85004.

6.      At all times relevant hereto, defendant U-Haul International designed, manufactured, fabricated and/or assembled and mounted onto a chassis the Subject Box Truck to U-Haul International's own design specifications.

-2-

7. Defendant, U-Haul Co. of Arizona ("U-Haul AZ") is a corporation organized and existing under the laws of the State of Arizona with a principal place of business located at 2721 N. Central Ave, Phoenix Arizona 85004.

8. At all times relevant hereto, defendant U-Haul AZ was the owner and lessor or renter of the Subject Box Truck.

9. Defendant, U-Haul Co of Virginia ("U-Haul VA") is a corporation organized and existing under the laws of the Commonwealth of Virginia with a principal place of business located at 2855 Airline Boulevard, Portsmouth, VA 23701.

10. At all times relevant hereto, defendant U-Haul VA was an entity that leased or rented the Subject Box Truck to defendant Hayes-Goode.

11. Defendants U-Haul VA, U-Haul AZ and U-Haul International shall hereinafter be referred to collectively as "the U-Haul Defendants."

12. The U-Haul Defendants, individually and by and through their agents, design, manufacture, fabricate, assemble, sell, rent and/or lease box trucks including the Subject Box Truck with the intention that such box trucks will be operated on highways and roadways throughout the United States of America, including on roadways and highways located in the Commonwealth of Virginia.

13. At all times relevant hereto the U-Haul Defendants knew or had reason to know and anticipated that the persons to whom it was renting or leasing its box trucks would not have training on how to safely operate its box trucks on public roadways.

14. At all times relevant hereto the U-Haul Defendants knew that side impacts were a common accident mode for persons involved in motor vehicle accidents while operating U-Haul box trucks.

-3-

15.    At the time that the Subject Box Truck was manufactured, assembled, sold and/or rented, the U-Haul Defendants knew that various technologies where readily available and relied upon by the driving public to prevent side impact accidents, including, but not limited to, lane keep assist, audible and visual signals to alert drivers of the presence of nearby vehicles traveling adjacent, and side cameras and sensors, but the U-Haul Defendants chose not to include these essential safety devices on its trucks, including the Subject Box Truck.

16.    At the time that the Subject Box Truck was rented or leased to defendant Hayes-Goode, the U-Haul Defendants did not provide any training or instruction relating to the safe operation of box trucks on public roadways, or, in the alternative, permitted its employees, contractors, and/or other entities engaged in the business of renting U-Haul trucks to rent or lease the Subject Box Truck to defendant Hayes-Goode with the knowledge or expectation that it was likely to be operated by individuals with little or no training or experience operating a box truck.

## JURISDICTION AND VENUE

17.    Jurisdiction is based on 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states and the amount in controversy exceeds One Hundred thousand dollars ($100,000.00), exclusive of interest and costs.

18.    Venue is proper in this district based on 28 U.S.C. § 1391(a) and Local Rule 3 (B)(3) in that the Eastern District of Virginia, Norfolk Division is where the accident occurred and where defendants are subject to personal jurisdiction.

## FACTS

19.    On July 25, 2022, Rigoberto Lagunas-Antunez was driving a 2006 GMC Savanna 2500 Van (hereinafter the "Antunez Vehicle") in which members of his family accompanied him, that was traveling on Route 58 in Southampton County, Virginia when suddenly and

without warning, the Subject Box Truck operated by defendant Hayes-Goode crossed into the lane of travel of the Antunez vehicle, struck the Antunez vehicle and thereby caused the Antunez vehicle to be pushed off of the roadway and onto the median and to flip over in a manner that caused the roof of the Antunez vehicle to crush down onto Rigoberto Lagunas-Antunez and other persons in the vehicle.

20.     As a result of the forgoing incident, Rigoberto Lagunas-Antunez sustained severe injuries resulting in his death at the scene of the accident.

21.     As a result of the foregoing incident, Rigoberto Lagunas-Antunez endured extreme pain and suffering and mental trauma just prior to his death.

## COUNT I
## NEGLIGENCE
### MARIE NATIVIDAD LAGUNAS-ATUNEZ, AS ADMINISTRATOR OF THE ESTATE OF RIGOBERTO LAGUNAS ANTUNEZ V. COREY RASHAAD HAYES-GOODE

22.     Plaintiff restates and incorporates herein by reference paragraphs 1 – 21 as though more fully set forth at length herein.

23.     The accident was caused by the negligence of defendant Hayes-Goode including, but not limited to, the following:

a.  switching lanes of travel and/or merging into the lane of travel of the Antunez vehicle when it was not safe to do so;

b.  switching or merging lanes without determining if the maneuver could be completed safely and without striking other vehicles;

c.  failing to maintain proper and reasonable control of the Subject Box Truck;

d.  failing to avoid striking other vehicles on the roadway, including the Antunez vehicle;

e.  failing to signal prior to attempting to switch lanes or merge into another lane of travel;

-5-

f.  attempting to switch lanes or merge into another lane of travel when he could not visually ascertain whether it was safe to do so;

g.  failing to observe the Antunez vehicle in a timely and reasonable manner in order to avoid striking the Antunez vehicle; and

h.  failing to steer or break the Subject Box Truck to avoid impact with the Antunez vehicle.

24.  As a direct and proximate result of the negligence of the defendant Corey Rashaad Hayes-Goode, Rigoberto Lagunas-Antunez sustained severe injuries resulting his death and other damages as more fully described above.

**COUNT II - NEGLIGENCE**
**MARIE NATIVIDAD LAGUNAS-ANTUNEZ, AS ADMINISTRATOR OF THE ESTATE OF RIGOBERTO LAGUNAS-ANTUNEZ V. U-HAUL INTERNATIONAL INC.**

25.  Plaintiff restates and incorporates herein by reference paragraphs 1-24 as though more fully set forth at length herein.

26.  U-Haul International designed, manufactured, tested, inspected, marked, sold distributed, delivered and otherwise put the Subject Box Truck into the stream of commerce.

27.  U-Haul International owed a duty to persons traveling on the roadways to design, manufacturer, and sell the Subject Box Truck in a condition that is safe for use and that eliminates unnecessary risk from the product's use.

28.  U-Haul International knew or should have known at the time it designed manufactured and sold or distributed the Subject Box Truck that it was not safe for use and subjected persons traveling on the roadways to risk of injury when drivers of the Subject Box Truck were traveling on the roadway or attempting to switch or merge lanes of travel.

29.     U-Haul International knew or should have known at the time it designed manufactured and sold or distributed the Subject Box Truck that it was not safe for use because it lacked necessary visual aids and signaling devices to ensure that the driver of the Subject Box Truck would be notified of the presence or other vehicles traveling parallel to and adjacent to the Subject Box Truck.

30.     The injuries sustained by Rigoberto Lagunas-Antunez were caused by and resulted from the negligent, careless and reckless acts and/or omissions of defendant U-Haul International Inc., by and through its agents, servants, representatives, employees and/or subcontractors acting within the course and scope of their employment as follows:

a.  renting or leasing the Subject Box Truck when defendant knew or should have known that the individual renting or leasing the Subject Box Truck did not have a valid driver's license and was not authorized or qualified to operate vehicles on public roadways;

b.  failing to ask and/or determine whether the individual renting or leasing the Subject Box Truck and/or the intended driver of the Subject Box Truck had a valid drivers license that was suspended or revoked;

c.  failing to take steps to determine whether defendant Hayes-Goode was capable of safely operating the Subject Box Truck;

d.  failing to train and require its employees, agents and affiliated businesses on necessary precautions to prevent vehicles from being rented to individuals who were not licensed to operate such vehicles;

e.  failing to train and require its employees, agents and affiliated businesses on the steps necessary to instruct and assist drivers on the proper adjustment of side mirrors;

f.   failing to train and require its employees, agents and affiliated businesses to assist any and all single vehicle operators with side mirror adjustments to allow for maximum visibility;

g.   designing, manufacturing and selling or distributing the Subject Box Truck without visual aids to enhance the operator's ability to detect vehicles traveling alongside the Subject Box Truck while traveling on roadways;

h.   designing, manufacturing and selling or distributing the Subject Box Truck without visual or audible signals to alert a driver to the presence of other vehicles traveling on the roadway adjacent and in close proximity to the Subject Box Truck;

i.   designing, manufacturing and selling or distributing the Subject Box Truck with inadequate lighting such that other drivers on the highway were not sufficiently notified of an operator's intention to switch or merge lanes when traveling adjacent to the Subject Box Truck;

j.   designing, manufacturing and selling or distributing the Subject Box Truck without any system for alerting driver that the Subject Box Truck was crossing into another lane while traveling on the roadway;

k.   designing, manufacturing and selling or distributing the subject box truck with mirrors that were difficult to operate and difficult to use and that offered no practical or feasible manner for a driver to adjust while traveling on the roadway to allow for a view of the passenger side of the Subject Box Truck;

l.   designing, manufacturing and selling or distributing the Subject Box Truck with mirrors that were insufficient to accommodate a variety of drivers, body types and

-8-

driving positions to be sure that the sides of the vehicle where fully visible to the driver;

m. failing to provide sufficient warnings and instructions and training to dealers and managers or rental locations on how to safely operate the Subject Box Truck;

n. failing to provide sufficient warnings, instruction and training to dealers and managers of rental locations on how to operate the side mirrors on the Subject Box Truck;

o. failing to provide warnings, instructions and training to its dealers to bring to renter's or driver's attention that the Subject Box Truck lacked the usual safety and signaling devices that ordinary drivers typically rely upon in other vehicles to alert the driver when there is another vehicle traveling immediately adjacent in a neighboring lane of travel.

31.     As a direct and proximate result of the negligence of the defendant U-Haul International., Rigoberto Lagunas-Antunez sustained severe injuries resulting his death and other damages as more fully described above.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**MARIE NATIVIDAD LAGUNAS-ANTUNEZ, AS ADMINISTRATOR OF THE ESTATE OF RIGOBERTO LAGUNAS-ANTUNEZ V. U-HAUL INTERNATIONAL INC.**

32.     Plaintiff restates and incorporates herein by reference  paragraphs 1-31 as though more fully set forth at length.

33.     U-Haul International impliedly warranted that the Subject Box Truck was not defective, unreasonably or inherently dangerous, that it was safe and suitable for ordinary and foreseeable use, that it was of merchantable quality, and that it was fit for its intended use and for

the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold.

34. In using the Subject Box Truck, defendant Hayes-Goode, other drivers on the roadway and various U-Haul dealers and rental locations relied upon Defendant U-Haul International's knowledge, skill and judgment and the implied warranty of merchantability made by the defendant U-Haul International.

35. The Subject Box Truck as designed, manufactured, and sold or distributed by U-Haul International was defective, unreasonably and inherently dangerous, not safe or suitable for use on the roadways, not of merchantable quality, not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold, and did not comply with other implied warranties made by U-Haul International as prescribed by law or as the evidence may establish.

36. As a direct and proximate result of U-Haul International's breaches of implied warranties, the operator of the Subject Box Truck failed to detect and avoid a collision with the Antunez vehicle and otherwise switched lanes or merged when it was not safe to do so, ultimately resulting in serious injuries and death to Rigoberto Lagunas-Antunez as detailed above.

**COUNT IV - NEGLIGENCE**
**MARIE NATIVIDAD LAGUNAS-ANTUNEZ, AS ADMINISTRATOR OF THE ESTATE OF RIGOBERTO LAGUNAS-ANTUNEZ V. U-HAUL CO. OF ARIZONA**

37. Plaintiff restates and incorporates herein by reference paragraphs 1-36 as though more fully set forth at length herein.

38. U-Haul AZ, owned, designed, manufactured, tested, inspected, marked, sold, leased, rented, distributed, delivered and otherwise put the Subject Box Truck into the stream of commerce.

39.     U-Haul AZ owed a duty to persons traveling on the roadways to design, manufacturer, and rent, lease or sell the Subject Box Truck in a condition that was safe for use and that eliminated unnecessary risk from the product's use.

40.     U-Haul AZ knew or should have known at the time it leased, rented, sold or distributed the Subject Box Truck for rental by others that it was not safe for use and subjected persons traveling on the roadways to risk of injury when drivers of the Subject Box Truck were traveling on the roadway or attempting to switch or merge lanes of travel.

41.     U-Haul AZ knew or should have known at the time it designed manufactured and leased, rented, sold or distributed the Subject Box Truck that it was not safe for use because it lacked necessary visual aids and signaling devices to ensure that the driver of the Subject Box Truck would be notified of the presence or other vehicles traveling parallel to and adjacent to the Subject Box truck.

42.     The injuries sustained by Rigoberto Lagunas-Antunez were caused by and resulted from the negligent, careless and reckless acts and/or omissions of defendant U-Haul AZ, by and through its agents, servants, representatives, employees and/or subcontractors acting within the course and scope of their employment as follows:

   a.   renting or leasing the Subject Box Truck when defendant knew or should have known that the individual renting or leasing the Subject Box Truck did not have a valid driver's license and was not authorized or qualified to operate vehicles on public roadways;

   b.   failing to ask and/or determine whether the individual renting or leasing the Subject Box Truck and/or the intended driver of the Subject Box Truck had a valid drivers license that was suspended or revoked;

-11-

c.  failing to take steps to determine whether defendant Hayes-Goode was capable of safely operating the Subject Box Truck;

d.  failing to train and require its employees, agents and affiliated businesses on necessary precautions to prevent vehicles from being rented to individuals who were not licensed to operate such vehicles;

e.  failing to train and require its employees, agents and affiliated businesses on the steps necessary to instruct and assist drivers on the proper adjustment of side mirrors;

f.   failing to train and require its employees, agents and affiliated businesses to assist any and all single vehicle operators with side mirror adjustments to allow for maximum visibility;

g.  designing, manufacturing and distributing or renting the Subject Box Truck without visual aids to enhance the operator's ability to detect vehicles traveling alongside the Subject Box Truck while traveling on roadways;

h.  designing, manufacturing and distributing or renting the Subject Box Truck without visual or audible signals to alert a driver to the presence of other vehicles traveling on the roadway adjacent and in close proximity to the Subject Box Truck;

i.  designing, manufacturing, distributing or renting the Subject Box Truck with inadequate lighting such that other drivers on the highway were not sufficiently notified of an operator's intention to switch or merge lanes of make a turn when traveling adjacent to the Subject Box Truck;

j.  designing, manufacturing, distributing or renting the Subject Box Truck without any system for alerting driver that the Subject Box Truck was crossing into another lane while traveling on the roadway;

k.  designing, manufacturing, distributing or renting the Subject Box Truck with mirrors that were difficult to operate and difficult to use and that offered no practical or feasible manner for a driver to adjust while traveling on the roadway to allow for a view of the passenger side of the Subject Box Truck;

l.  designing, manufacturing, distributing or renting the Subject Box Truck with mirrors that were insufficient to accommodate a variety of drivers, body types and driving positions to be sure that the sides of the vehicle where fully visible to the driver;

m.  failing to provide sufficient warnings and instructions and training to renters and drivers on how to safely operate the Subject Box Truck;

n.  failing to provide sufficient warnings, instruction and training to renters and drivers on how to operate the side mirrors on the Subject Box Truck;

o.  failing to provide warnings, instructions and training to its renters and drivers to bring to renter's or driver's attention that the Subject Box Truck completely lacked the usual safety and signaling devices that ordinary drivers typically rely upon in vehicles to alert the driver when there is another vehicle traveling immediately adjacent in a parallel lane.

43.    As a direct and proximate result of the negligence of the defendant U-Haul AZ, Rigoberto Lagunas-Antunez sustained severe injuries resulting his death and other damages as more fully described above.

**COUNT V**
**BREACH OF IMPLIED WARRANTY**
**MARIE NATIVIDAD LAGUNAS-ANTUNEZ, AS ADMINISTRATOR OF THE ESTATE OF RIGOBERTO LAGUNAS-ANTUNEZ V. U-HAUL CO. OF ARIZONA**

44.    Plaintiff restates and incorporates herein by reference paragraphs 1-43 as though more fully set forth at length.

45.    U-Haul AZ impliedly warranted that the Subject Box Truck was not defective, unreasonably or inherently dangerous, that it was safe and suitable for ordinary and foreseeable use, that it was of merchantable quality, and that it was fit for its intended use and for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold.

46.    In using the Subject Box Truck, defendant Hayes-Goode, other drivers on the roadway, and various U-Haul dealers and rental locations relied upon defendant U-Haul AZ's knowledge, skill and judgment and the implied warranty of merchantability made by the defendant U-Haul AZ.

47.    The Subject Box Truck as designed, manufactured, and sold, rented or distributed by U-Haul AZ was defective, unreasonably and inherently dangerous, not safe or suitable for use on the roadways, not of merchantable quality, not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold, and did not comply with other implied warranties made by U-Haul AZ as prescribed by law or as the evidence may establish.

48.    As a direct and proximate result of U-Haul AZ's breaches of implied warranties, the operator of the Subject Box Truck failed to detect and avoid a collision with the Antunez vehicle and otherwise switched lanes or merged when it was not safe to do so, ultimately resulting in serious injury and death to Rigoberto Lagunas-Antunez.

### COUNT VI - NEGLIGENCE
### MARIA NATIVIDAD LAGUNAS-ANTUNEZ V. U-HAUL CO OF VIRGINIA

49.    Plaintiff restates and incorporates herein by reference paragraphs 1-48 as though more fully set forth at length herein.

50.     U-Haul VA tested, inspected, marked, sold distributed, delivered and otherwise put the Subject Box Truck into the stream of commerce.

51.     U-Haul VA owed a duty to persons traveling on the roadways to sell, rent of lease the Subject Box Truck in a condition that was safe for use and that eliminated unnecessary risk from the product's use.

52.     U-Haul VA knew or should have known at the time it rented or distributed the Subject Box Truck for rental by others that it was not safe for use and subjected persons traveling on the roadways to risk of injury when drivers of the Subject Box Truck were traveling on the roadway or attempting to switch or merge lanes of travel.

53.     U-Haul VA knew or should have known at the time it sold, rented, leased or distributed the Subject Box Truck that it was not safe for use because it lacked necessary visual aids and signaling devices to ensure that the driver of the Subject Box Truck would be notified of the presence or other vehicles traveling parallel to and adjacent to the Subject Box truck.

54.     The injuries sustained by Rigoberto Lagunas-Antunez were caused by and resulted from the negligent, careless and reckless acts and/or omissions of defendant U-Haul VA, by and through its agents, servants, representatives, employees and/or subcontractors acting within the course and scope of their employment as follows:

   a. renting or leasing the Subject Box Truck when defendant knew or should have known that the individual renting or leasing the Subject Box Truck did not have a valid driver's license and was not authorized or qualified to operate vehicles on public roadways;

-15-

b.  failing to ask and/or determine whether the individual renting or leasing the Subject Box Truck and/or the intended driver of the Subject Box Truck had a valid drivers license that was suspended or revoked;

c.  failing to take steps to determine whether defendant Hayes-Goode was capable of safely operating the Subject Box Truck;

d.  failing to train and require its employees, agents and affiliated businesses on necessary precautions to prevent vehicles from being rented to individuals who were not licensed to operate such vehicles;

e.  failing to train and require its employees, agents and affiliated businesses on the steps necessary to instruct and assist drivers on the proper adjustment of side mirrors;

f.  failing to train and require its employees, agents and affiliated businesses to assist any and all single vehicle operators with side mirror adjustments to allow for maximum visibility;

g.  distributing or renting the Subject Box Truck without visual aids to enhance the operator's ability to detect vehicles traveling alongside the Subject Box Truck while traveling on roadways;

h.  distributing or renting the Subject Box Truck without visual or audible signals to alert a driver to the presence of other vehicles traveling on the roadway adjacent and in close proximity to the Subject Box Truck;

i.  distributing or renting the Subject Box Truck with inadequate lighting such that other drivers on the highway were not sufficiently notified of an operator's intention to switch or merge lanes of make a turn when traveling adjacent to the Subject Box Truck;

-16-

j.  distributing or renting the Subject Box Truck without any system for alerting driver that the Subject Box Truck was crossing into another lane while traveling on the roadway;

k.  distributing or renting the Subject Box Truck with mirrors that were difficult to operate and difficult to use and that offered no practical or feasible manner for a driver to adjust while traveling on the roadway to allow for a view of the passenger side of the Subject Box Truck;

l.  distributing or renting the Subject Box Truck with mirrors that were insufficient to accommodate a variety of drivers, body types and driving positions to be sure that the sides of the vehicle where fully visible to the driver;

m.  failing to provide sufficient warnings and instructions and training to renters and drivers on how to safely operate the Subject Box Truck;

n.  failing to provide sufficient warnings, instruction and training to renters and drivers on how to operate the side mirrors on the Subject Box Truck;

o.  failing to provide warnings, instructions and training to its renters and drivers to bring to renter's or driver's attention that the Subject Box Truck completely lacked the usual safety and signaling devices that ordinary drivers typically rely upon in vehicles to alert the driver when there is another vehicle traveling immediately adjacent in a parallel lane.

55.  As a direct and proximate result of the negligence of the defendant U-Haul VA, Rigoberto Lagunas-Antunez sustained severe injuries resulting his death and other damages as more fully described above.

## COUNT VII
## BREACH OF IMPLIED WARRANTY
## <u>MARIA NATIVIDAD LAGUNAS-ANTUNEZ V. U-HAUL CO OF VIRGINIA</u>

56.     Plaintiff restates and incorporates herein by reference paragraphs 1-55 as though more fully set forth at length.

57.     U-Haul VA impliedly warranted that the Subject Box Truck was not defective, unreasonably or inherently dangerous, that it was safe and suitable for ordinary and foreseeable use, that it was of merchantable quality, and that it was fit for its intended use and for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold.

58.     In using the Subject Box Truck, defendant Hayes-Goode, other drivers on the roadway, and various U-Haul dealers and rental locations relied upon defendant U-Haul VA's knowledge, skill and judgment and the implied warranty of merchantability made by the defendant U-Haul VA.

59.     The Subject Box Truck as sold, rented, leased or distributed by U-Haul VA was defective, unreasonably and inherently dangerous, not safe or suitable for use on the roadways, not of merchantable quality, not fit for its intended uses or for the general and particular purposes for which it was designed, manufactured, tested, inspected, marketed, distributed, delivered, and sold, and did not comply with other implied warranties made by U-Haul VA as prescribed by law or as the evidence may establish.

60.     As a direct and proximate result of U-Haul VA's breaches of implied warranties, the operator of the Subject Box Truck failed to detect and avoid a collision with the Antunez

vehicle and otherwise switched lanes or merged when it was not safe to do so, ultimately resulting in serious injury and death to Rigoberto Lagunas-Antunez.

## COUNT VIII – WRONGFUL DEATH

61. Plaintiff restates and incorporates herein by reference paragraphs 1-60 as though more fully set forth at length.

62. This claim arises out of VA. Code Ann. §8.01-50 and is brought by Plaintiff as the duly qualified Personal Representative for the Estate of Rigoberto Lagunas-Antunez.

63. At all times relevant hereto, defendant Hayes-Goode owed a duty to Rigoberto Lagunas-Antunez, as the driver of a motor vehicle on Route 58 in Southampton County, Virginia, on July 25, 2022, and to other motorists driving on that same roadway, to operate the Subject Box Truck on the roadway in a manner that was not negligent.

64. At all times relevant hereto, the U-Haul Defendants owed duties to Rigoberto Lagunas-Antunez to design and manufacturer and distribute, lease, sell or rent box trucks that were not defective and/or unreasonably dangerous to operate on public roadways.

65. As a direct and proximate result of the negligence of all defendants and breaches of warranties of the U-Haul Defendants, as aforesaid, Rigoberto Lagunas-Antunez was caused to suffer serious bodily injuries ultimately resulting in his death on July 25, 2022.

67. As a direct and proximate result of the negligence of all defendants and breaches of warranties of the U-Haul Defendants, as aforesaid, the statutory beneficiaries suffered the following damages: reasonably expected loss of income of decedent; reasonably expected loss of services, protection, care and assistance the decedent provided and was expected to provide into the future to the beneficiaries;  solace, loss of society and companionship, comfort, kindly offices and guidance and advice of Rigoberto Lagunas-Antunez and incurred funeral and burial expenses; and were otherwise damaged.

WHEREFORE, plaintiff Maria Natividad Lagunas-Antunez demands judgment against all defendants on all counts in an amount in excess of $100,000, together with interest from July 25, 2022, post judgment interest, costs, and other such relief as the Court deems appropriate.

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**

> PLAINTIFF MARIE NATIVIDAD
> LAGUNAS-ANTUNEZ, ADMINISTRATOR OF
> THE ESTATE OF RIGOBERTO LAGUNAS-
> ANTUNEZ
>
>
> By: Counsel:
>
>
> __/s/_____
> William W. Tunner, Esq. (VSB #38358)
> Paulo E. Franco, Jr., Esq. (VSB #30298)
> Thompson McMullan, P.C.
> 100 Shockoe Slip
> Richmond, VA 23219-4140
> Phone: (804) 649-7545
> Facsimile: (804) 780-1813
> wtunner@t-mlaw.com
> pfranco@t-mlaw.com
> *Counsel for Plaintiff*